FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAR 12 PM 12:34

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| NATHAN SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 312-001 |
| ) | (Formerly CR 309-009) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Petitioner Nathan Smith's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

**I.     BACKGROUND**

**A.     Criminal Proceedings**

In April of 2009, a federal grand jury indicted Petitioner on one count of bank robbery, in violation of 18 U.S.C. § 2113(a). United States v. Smith, CR 309-009, doc. no. 1 (S.D. Ga. Apr. 9, 2009) (hereinafter "CR 309-009"). Later, in July of 2009, a federal grand jury returned a superseding indictment and therein indicted Petitioner on the same count of bank robbery, in addition to a second count for interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2313. Id., doc. no. 27. Pursuant to 18 U.S.C. § 3006A, the Criminal Justice Act, Daniel M. King, Jr., was appointed to represent Petitioner, id., doc.

no. 37, although he was shortly thereafter relieved as counsel and replaced by Matthew L. Waters, id., doc. nos. 11, 37, 38.

Petitioner pleaded not guilty to both counts, id., doc. nos. 7, 30, and, with the assistance of Mr. Waters, proceeded to file various discovery and pre-trial motions. See id., doc. nos. 19-24, 45, 52. On August 25, 2009, the criminal action was assigned to the Honorable J. Randal Hall, United States District Judge, for final disposition, and jury selection was set for September 14, 2009. Id., doc. nos. 42, 43. However, during a hearing before the Court on August 27, 2009, Petitioner expressed his intention to proceed *pro se* in his criminal trial, and, after a lengthy discussion with the Court as to the dangers of doing so, was permitted to so proceed, thus relegating Mr. Waters to the role of stand-by counsel. See generally id., doc. no. 121; see also doc. no. 46. At a pre-trial conference before Judge Hall on September 9, 2009, Petitioner confirmed his prior election to proceed *pro se* with the assistance of Mr. Waters in a stand-by capacity. Id., doc. no. 122, pp. 1-10.

At trial, which took place on September 23, 2009, the Government presented evidence showing that, on March 3, 2009, Petitioner entered the Bank of Dudley in Dublin, Georgia, and handed the teller a note that said "[g]ive me $2500 out of your bottom drawer. I have a gun. If you don't believe me, I'll show it to you." Id., doc. no. 80, p. 38. Accordingly, the teller handed Petitioner a number of bills that totaled $2,400.00, each of which was bound by a "money wrapper" displaying the words "Bank of Dudley." Id. at 39-40, 97-100. Petitioner then took the note and the money and exited the bank, at which point he began moving towards the parking lot behind the bank. Id. at 42-46. The bank teller then activated the bank's silent alarm, which alerted the police as to the robbery, and told the other

bank employees that she had been robbed. Id. at 40-41. Another bank teller observed Petitioner pass by a bank window, and subsequently, at the bank's back door, observed a gold van with a Florida tag backing out of the bank parking lot and then "speeding off" down the road. Id. at 133-34. The teller who had been robbed provided the police with a description of Petitioner, id. at 45-49, and a police officer later, after having received the report of the bank robbery and the description of Petitioner and the van, stopped a van matching that description and apprehended Petitioner.[1] Id. at 63-70. After placing Petitioner in his police car, the police officer returned to the van and observed, in between the seats, bundles of bills bound in "Bank of Dudley" money wrappers totaling $2,480.00. Id. at 71-72, 100, 120.

The Government also presented evidence establishing that, in February of 2009, a gold 2002 Chevy Venture van was stolen from a dealership parking lot in Jacksonville, Florida, and that the general manager of that dealership had never given Petitioner permission to drive that vehicle. Id., doc. no. 80, pp. 126-30. The general manager confirmed that the van in which Petitioner was apprehended was the same van that had been stolen from his lot. Id.

Notably, Petitioner presented no evidence of his own, did not call any witnesses, and repeatedly admitted that he was the man who took the money from the Bank of Dudley, left the bank in the gold van, and was apprehended by the police in that van along with the money. Id. at 32-34, 106, 137, 172-73. Rather, Petitioner argued that, although he *had*

---

[1] Notably, the Government showed at trial a security video taken by the Bank of Dudley's security cameras that depicted Petitioner robbing the bank and subsequently leaving in the gold van. CR 309-009, doc. no. 80, pp. 103-06.

3

performed the actions that constituted the crimes for which he was indicted, he had not done so "knowingly," and could thus not be convicted of those crimes. Id. 173-74. The jury unanimously found Petitioner guilty on both counts. Id. at 190-93.

On October 1, 2009, Petitioner filed a notice of appeal.[2] Id., doc. no. 83. Shortly thereafter, Petitioner filed a motion requesting the appointment of counsel for the "post trial stage" of his case, id., doc. no. 68, which Judge Hall granted on December 9, 2009, id., doc. no. 82. Thus, pursuant to 18 U.S.C. § 3006A, Henry N. Crane, III, was appointed to represent Petitioner. Id., doc. no. 85. On January 28, 2010, however, Petitioner filed a motion to terminate Mr. Crane "as his representative for all post trial proceedings." Id., doc. no. 89. At a hearing before this Court on February 8, 2010, Petitioner explained that he felt that Mr. Crane had intentionally misled him as to the amount of time available to file an appellate brief and his intentions regarding researching his case and appearing at the jail where Petitioner was incarcerated, among other things. Id., doc. no. 133, pp. 6-7. Following

---

[2]Notably, around the same time that he filed his notice of appeal, Petitioner filed a complaint in this Court against Gary Hutchins, the Sheriff of Jefferson County, and Edward J. Tarver, the United States Attorney for the Southern District of Georgia, under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). See Smith v. Hutchins, CV 109-147, doc. no. 1 (S.D. Ga. Nov. 25, 2009) (hereinafter "CV 109-147"). In that case, Petitioner alleged that, following his waiver of court-appointed counsel while he was in pretrial detention, Defendants deprived him of his constitutional right to access a law library and legal materials to prepare his defense. Id. The undersigned found that Petitioner had already raised that issue in his criminal case as a basis for his motion for a new trial, which was denied, see CR 309-009, doc. nos. 70, 82, and that, moreover, a number of courts had found that, where an individual elects to represent himself in a criminal prosecution, he is not constitutionally entitled to access to a law library or legal materials. CV 109-147, doc. no. 9, pp. 3-4. Accordingly, the undersigned recommended that Petitioner's complaint be dismissed, and Judge Hall subsequently adopted that recommendation. Id., doc. nos. 9, 15. Petitioner then appealed the decision to the Eleventh Circuit, id., doc. no. 17, which affirmed the Judge Hall's holding. Smith v. Hutchins, 426 F. App'x 785, 789-90 (11th Cir. 2011).

4

another lengthy discussion with Petitioner concerning the implications of proceeding *pro se*, see id. at 20-25, the Court relieved Mr. Crane of further representation of Petitioner in the district court. Id. at 24; see also doc. no. 98.

At a sentencing hearing held on February 19, 2010, Judge Hall sentenced Petitioner to a 262-month term of imprisonment, a special assessment fee of $200.00, and a term of supervised release of three years, all of which was in accordance with the sentencing recommendation contained in the Presentence Investigation Report ("PSI"). Id., doc. no. 117, pp. 31-32.

On March 29, 2010, the Eleventh Circuit Court of Appeals denied Petitioner's motion to terminate Mr. Crane as appointed appellate counsel and proceed *pro se*. Id., doc. no. 116. Accordingly, on August 25, 2010, Mr. Crane submitted a brief raising the following grounds for relief: (1) the district court violated the Speedy Trial Act by setting Petitioner's trial date for less than thirty days after he terminated Mr. Waters; (2) Petitioner's waiver of his Sixth Amendment right to counsel at trial was invalid; (3) Petitioner's right to counsel was violated when he was sentenced without a valid waiver or an attorney; (4) Petitioner did not qualify as a career offender because his prior convictions did not constitute "crimes of violence;" and (5) Petitioner's 262-month sentence was unreasonable. (See generally doc. no. 11-1.) The Eleventh Circuit affirmed Petitioner's conviction and sentence. See United States v. Smith, 417 F. App'x 911, 918 (11th Cir. 2011). The Supreme Court denied Petitioner's petition for a writ of certiorari. See Smith v. United States, 131 S. Ct. 3005 (2011).

**B.      Issues Raised in § 2255 Motion**

Petitioner then proceeded to file his initial § 2255 motion, which is dated December

5

26, 2011, and was filed by the Clerk of Court on January 3, 2012. (See doc. no. 1.) In accordance with the Court's subsequent instructions (see doc. no. 3), Petitioner than submitted an amended motion, which is dated January 18, 2012, and was filed by the Clerk of Court on January 23, 2012 (see doc. no. 4). In his amended motion, Petitioner raises the following grounds for relief: (1) Petitioner was unable to "argue all grounds" on direct appeal due to the Bureau of Prisons ("BOP") having misplaced seven DVDs containing surveillance footage of the robbery; (2) the district court erred by denying his requests for an investigator, a collection of physical evidence, and identifications and subpoenas of witnesses; (3) during and after his direct appeal, the BOP recklessly endangered his life by revealing his history of sexual abuse to the prison population, diagnosing him with epilepsy and a sleep-seizure disorder, restraining him following his refusal of a cellmate, and somehow causing him to fall and break his thumb; (4) the jail in which he was incarcerated during his pre-trial detention violated his Sixth Amendment rights by failing to provide him with legal reference materials that he could use to verify the legal citations contained in various court documents; and (5) the Eleventh Circuit erred by denying his motion to terminate his appellate counsel and thereby refusing to permit him to proceed *pro se* on appeal. (See id. at 5-16.)

Respondent contends that Grounds One through Four are procedurally barred because Petitioner failed to raise them on direct appeal, that the Eleventh Circuit previously resolved Ground Five and that it thus cannot be re-litigated, and that all five grounds are either impermissibly conclusory or fail on the merits. (Doc. no. 11, pp. 18-25.) Petitioner has filed a reply to Respondent's response, in which he contends that he is "actually innocent" of the

crimes for which he was convicted. (Doc. no. 15, p. 1.) In his reply, Petitioner also requests an evidentiary hearing (id. at 3) and provides additional arguments concerning the grounds for relief set forth in his § 2255 motion (id. at 3-9). The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need for Evidentiary Hearing

First, with regard to Petitioner's request for an evidentiary hearing, it is well settled in the Eleventh Circuit that "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

As described in detail below, the Court finds that four of the five grounds asserted in Petitioner's claim are procedurally defaulted. Moreover, the fifth ground has already been decided adversely to Petitioner by the Eleventh Circuit, and therefore cannot be re-litigated here. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing (doc. no. 15, p. 3) should be denied.

### B. Grounds One, Two, Three, and Four are Procedurally Defaulted

A threshold issue in this case is whether Grounds One through Four of Petitioner's

7

§ 2255 motion are procedurally defaulted. Respondent argues that they are and that the default cannot be excused because Petitioner cannot show either (1) cause excusing his default and actual prejudice from the alleged errors, or (2) that the Court's failure to consider his claims will result in a miscarriage of justice because he is "actually innocent." (See doc. no. 11, pp. 19-22.)

As described individually in more detail below, Petitioner argues in his § 2255 motion and his reply to Respondent's response that he did not raise the issues asserted in each ground on direct appeal for a variety of reasons. (See generally doc. nos. 4, 15.) Additionally, as noted above, Petitioner also contends that he is actually innocent of the crimes for which he was convicted, and argues in particular that he mistakenly believed that the threatening note that he handed the bank teller at the Bank of Dudley was actually a check for $2500.00 from his friend "Mario G." that he was attempting to cash. (Id. at 1-2.)

Notably, a prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Generally, where a petitioner seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial, id. at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (*per curiam*) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

8

To overcome a procedural bar or default, the § 2255 movant must "demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." Montano, 398 F.3d at 1280. Notably, "cause" requires a showing of some external impediment preventing counsel from raising the claim previously. Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'

Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Here, Petitioner does not contend that the merits of the grounds asserted in his § 2255 motion could not be reviewed on direct appeal without further factual development. Therefore, his claims were "available" withing the meaning of Mills. See 36 F.3d at 1055. Accordingly, the claims asserted in those grounds are not cognizable unless Petitioner can overcome the procedural bar by establishing cause and prejudice or by showing actual innocence. See Montano, 398 F.3d at 1280. The Court addresses these issues separately below, concluding that Petitioner cannot satisfy either standard.

1. **Cause and Prejudice**

   i. **Ground One**

In Ground One, Petitioner asserts that he was "unable to argue all grounds" on direct appeal as a result of the BOP misplacing and rendering unavailable seven DVDs containing footage of the bank robbery for which he was charged. (Doc. no. 4, p. 5.) In what appears to be his only effort to demonstrate cause as to his failure to assert that claim on direct appeal, Petitioner notes that he was not informed that the DVDs were lost until after he filed a petition for a writ of certiorari in the Supreme Court. (Id. at 5; see also doc. no. 15, p. 5.) Petitioner notes that it was not until "well after [his] direct appeal briefs had been answered and denied" that he learned that the BOP had misplaced the DVDs and "Western Regional counsel Dennis Wong" replaced them. (Doc. no. 15, p. 5.) However, that assertion, even if entirely true, misses the mark, in that it does nothing to explain Petitioner's failure to raise on direct appeal his claim that, because he did not have access to the DVDs, he was unable to argue certain grounds. In other words, the dates on which Petitioner ultimately learned *who* had misplaced the DVDs and had those DVDs replaced have no bearing on Petitioner's ability to raise a claim concerning the absence of those DVDs on direct appeal.[3] Thus, Petitioner has not demonstrated cause as to his failure to raise Ground One on direct appeal. Weeks, 52 F.3d at 1561.

Even if Petitioner *had* demonstrated cause as to his failure to raise Ground One on

---

[3] Accordingly, to the extent that Petitioner intends to argue that he could not have brought Ground One on direct appeal because further factual development was required, that argument fails for that same reason: no further factual development was necessary to assert the claims in Ground One, as he was fully aware at the time of his direct appeal that, for whatever reason, he did not have possession of or access to the DVDs.

10

direct appeal, he has failed to show any actual prejudice that he suffered as a result of the alleged error asserted therein. In fact, the crux of Petitioner's argument that he suffered prejudice as a result of the missing DVDs appears to concern the trial jury's reaction to video footage that *was* shown at trial depicting Petitioner running – rather than walking – from the bank towards the bank parking lot. (Doc. no. 15, pp. 3-4.) However, Petitioner does not explain how the fact of whether he was running or walking towards the bank parking lot might have had any actual – or even possible – effect on the outcome of his trial proceeding, or how his possession of that same footage on appeal would have made any difference one way or the other. Thus, Petitioner has also failed to show actual prejudice based on the claim asserted in Ground One. Frady, 456 U.S. at 170. Because Petitioner has shown neither cause nor prejudice with respect to Ground One, that ground is therefore procedurally defaulted. Montano, 398 F.3d at 1280.

### ii. Grounds Two and Four

Next, Petitioner has failed to demonstrate cause for failing to raise the claims asserted in Grounds Two and Four on direct appeal. In Ground Two, Petitioner asserts that the trial court denied him access to physical evidence and witnesses; in Ground Four, he asserts that he was denied legal and reference materials while in pre-trial detention. (Doc. no. 4, pp. 6-7, 9-10.) In short, as to the claims in both grounds, and as correctly noted by Respondent, Petitioner simply alleges that his appellate attorney, Mr. Crane, decided not to raise those claims on appeal. (See id.) However, Mr. Crane's decision to refrain from raising those claims does not – either logically or legally – constitute a showing of some "*external impediment* [preventing] counsel from raising the claim" on appeal, which is necessary for

11

Petitioner to effectively demonstrate valid cause.[4] Weeks, 52 F.3d at 1561 (emphasis added).

Petitioner has also failed to demonstrate actual prejudice as to the supposed errors asserted in Grounds Two and Four. Notably, Petitioner does not make any argument whatsoever as to prejudice resulting from Ground Four. (See doc. no. 4, pp. 9-10; see generally doc. no. 15.) As to Ground Two, Petitioner appears to make a number of distinct arguments concerning prejudice, all of which fail. (See doc. no. 15, pp. 6-7.) First, although Petitioner argues that he was denied an investigator to locate a Bank of America teller to whom he allegedly gave the same threatening note that he ultimately gave the Bank of Dudley teller and who would "[substantiate his] version of the events" (id. at 6), he does not explain in what way he expects that the Bank of America teller might have done so; more importantly, he does not provide any credible explanation as to how the teller's testimony would have affected the outcome of his trial, especially in light of the overwhelming evidence against him. Frady, 456 U.S. at 170.

Similarly, although Petitioner argues that he needed an investigator to locate an "E-Z Stop convenience store clerk" who sold him $20.00 worth of gas following the robbery in

---

[4]To the extent that Petitioner argues that his claims in Ground Two concerning the district court's denial of his requests for the production of certain physical evidence *were*, in fact, raised on direct appeal, the Court notes that, of the various pieces of evidence that Petitioner now asserts he requested, only the bus ticket receipt was actually addressed in any capacity in the appellate brief. (See doc. no. 11-1, p. 27.) There, however, the receipt was discussed in support of Petitioner's attempt to show prejudice in connection to his claim that the district court violated the Speedy Trial Act by trying him less than thirty days after he terminated his trial counsel, and *not* in the context of the receipt's absence constituting an independent claim or source of error. (Id. at 23-28.) Thus, Petitioner's claim here – that he was denied certain evidence and resources – was not raised on direct appeal, and Petitioner must accordingly demonstrate cause and prejudice to overcome the procedural bar. Montano, 398 F.3d at 1280.

order to attest to his demeanor and to "account for the $20.00 of missing bank money" (doc. no. 15, p. 6), Petitioner does not explain how an attestation as to his demeanor or an accounting of missing bank money would have had any effect on the outcome of his proceedings.[5] Frady, 456 U.S. at 170.

Next, Petitioner fails to show prejudice based on his argument that he was denied access to a bus ticket receipt that he alleges would have demonstrated that he was "500 miles away in the city of Baltimore, Md. at the time [the gold van] was stole in Florida." (Doc. no. 15, p. 7.) In fact, the Court finds Petitioner's heavy reliance on the bus ticket receipt as a source of possible exoneration especially dubious in light of the fact that Petitioner was convicted for "possession of a stolen motor vehicle," and not for the actual theft of that motor vehicle. See CR 309-009, doc. no. 106, p. 1. That being the case, Petitioner's whereabouts on the date of the theft are entirely irrelevant to his ultimate conviction. Thus, Petitioner's inability to produce the bus ticket receipt for use at trial cannot possibly demonstrate actual prejudice as to those proceedings. Frady, 456 U.S. at 170.

Finally, as to Petitioner's argument that he needed access to cell phone records in order to prove that he made a call to "Mario G.," the alleged writer of the threatening note that Petitioner mistook for a check for $2500.00 (doc. no. 15, p. 7), that argument also fails to demonstrate prejudice, in that Petitioner again fails to present a credible explanation as to how proof of that phone call would have in any way affected the outcome of his trial. Petitioner likewise fails to explain the utility of using cell phone records to "track down"

---

[5]Indeed, the Court finds it especially difficult to ascertain how the ultimate fate of $20.00 of the stolen bank money might have any relevance whatsoever to Petitioner's convictions or the instant motion.

13

Mario G., id., or how doing so would have affected the outcome of his trial. Frady, 456 U.S. at 170.

In sum, Petitioner has shown neither cause nor prejudice with regard to Grounds Two and Four, and those grounds are thus procedurally barred from being brought in the instant § 2255 petition. Montano, 398 F.3d at 1280.

### iii. Ground Three

Next, Petitioner fails to show cause for his failure to bring the claims asserted in Ground Three on direct appeal. In Ground Three, Petitioner alleges that the BOP "recklessly endangered" him during his incarceration based on a number of alleged events. (Doc. no. 4, p. 8.) Petitioner notes that those alleged events took place during and after he filed his appellate brief. (See id.) Thus, as argued by Respondent (doc. no. 11, p. 20), Petitioner should have been able to raise at least some of those claims on appeal. Weeks, 52 F.3d at 1561. Therefore, Petitioner has not shown cause as to his failure to do so.

However, even if the Court were to assume *arguendo* that Petitioner has shown valid cause as to his failure to bring the claims asserted in Ground Three on appeal, he has failed to demonstrate any prejudice whatsoever as a result of those claims. In short, the claims presented in Ground Three – that a mail room error resulted in the disclosure of his history of sexual abuse to the prison population, that he was diagnosed with epilepsy and a sleep-seizure disorder, that he was put in restraints for refusing to accept a cellmate, and that an undisclosed series of events resulted in him breaking his thumb (doc. no. 4, p. 8) – simply do not have any bearing on Petitioner's trial court proceedings or his ultimate convictions, and are therefore wholly inadequate to demonstrate any prejudice in connection to those

proceedings or convictions.[6] Frady, 456 U.S. at 170.

Therefore, Petitioner has failed to show cause and prejudice as to the claims asserted in Ground Three, and that ground is accordingly procedurally barred as well.

### 2. Actual Innocence

Although Petitioner has failed to demonstrate cause and prejudice as to Grounds One, Two, Three, and Four, the Court must still examine whether he can establish actual, factual innocence to save him from default. Petitioner contends that he is actually innocent, arguing that the crimes for which he was convicted were the result of a simple misunderstanding rather than any knowing criminal intent. (Doc. no. 15, p. 2.) Specifically, Petitioner argues that he was "tricked into rushing to both the Bank of America and the Bank of Dudley with a slip of paper he assumed was a check for $2500.00." (Id.) Petitioner asserts that he watched his friend Mario G. write him a check for $2500.00 that was intended to settle the debt that he was owed following Petitioner's exchange of jewelry for Mario G.'s van, the stolen vehicle in which Petitioner was eventually apprehended. (Id.) Petitioner additionally asserts that it did not occur to him to actually look at the "check" in question until the Bank of Dudley teller had given him $2400.00 in cash – as well as, curiously, the "check" itself – and he was walking down the sidewalk outside the bank towards his van. (Id.)

To establish actual innocence, Petitioner must demonstrate that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has resulted in the

---

[6]In fact, although the Court need not delve into a lengthy analysis on the subject given the effective procedural bar, the claims that Petitioner asserts in Ground Three are not cognizable in a § 2255 petition. Rather, Petitioner's claims in Ground Three, given that they concern the conditions of his confinement, would be properly brought in an action pursuant to Bivens.

15

conviction of someone who is actually innocent." Murray v. Carrier, 477 U.S. 478, 495-96 (1985); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The actual innocence exception "is exceedingly narrow in scope," and a petitioner seeking to invoke it must "show that it is more likely than not that no reasonable juror would have convicted him." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Id. (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)).

Here, Petitioner has not presented any new evidence to suggest that he did not commit the offenses for which he was convicted such that no reasonable juror would have convicted him in light of that new evidence. In fact, Petitioner appears to make an argument here that is fundamentally identical to the argument that he made at trial, and which *did* result in his conviction. See generally CR 309-009, doc. no. 80. Therefore, the actual innocence exception does not allow him to bypass the procedural bar with respect to Grounds One, Two, Three, and Four.

### B. Ground Five Previously Resolved by Eleventh Circuit

In Ground Five, Petitioner argues that he was "unable to proceed *pro se* on appeal" due to the Eleventh Circuit's denial of his motion to terminate his appellate counsel. (Doc. no. 4, p. 16.) However, as correctly argued by Respondent, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); see also Mills, 36 F.3d at 1056; Edwards v. United States, 795 F.2d 958, 961 (11th Cir.

1986); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (*per curiam*). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner – who must file his motion for relief under 2255 in the very court that convicted him – can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. Nyhuis, 211 F.3d at 1343.

Here, while the Court acknowledges that Petitioner did not raise his inability to proceed *pro se* on appeal as an independent claim in his appellate brief,[7] the facts remain that he *did* file a motion to terminate Mr. Crane as his appellate counsel, and that the Eleventh Circuit explicitly considered and denied that motion. See CR 309-009, doc. no. 116. Therefore, the Eleventh Circuit has previously decided the matter – Petitioner's desire to proceed *pro se* on appeal – adversely to Petitioner on direct appeal such that the matter cannot now be re-litigated here.[8] Nyhuis, 211 F.3d at 1343.

---

[7] Indeed, such a claim that would have been somewhat illogical to make at that time, considering that the appeal had not yet been decided adversely to Petitioner and that he was then represented by appointed counsel, who prepared the appellate brief.

[8] Moreover, while the Court need not address the issue in detail given that Ground Four is procedurally barred, see supra Part II.B.1.ii, the claims that Petitioner asserts in Ground Four have also been previously decided adversely to Petitioner on direct appeal such that they cannot be re-litigated here. As described supra Part I.A, on November 25, 2009, Petitioner initiated a lawsuit pursuant to Bivens in which he alleged that he had been deprived of his constitutional right to access a law library and legal materials. CV 109-147, doc. no. 1. After the undersigned recommended that Petitioner's claim in that case be dismissed and Judge Hall adopted that recommendation, Petitioner appealed the decision to the Eleventh Circuit, which affirmed Judge Hall's holding. Id., doc. nos. 9, 15, 17, 26.

17

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the instant § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 12th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE